1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICKY NOLAN,

        Plaintiff,

 v.

CADE HERRING, *et al.,*

        Defendants.

3:14-cv-00445-MMD-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF No. 84, 85), plaintiff's opposition (ECF Nos. 103, 105)[1], and defendants' reply (ECF Nos. 99, 106). Having thoroughly reviewed the record and papers, the court hereby recommends that the defendants' motion for summary judgment be denied.

### I.  PROCEDURAL HISTORY

   Ricky Nolan ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Ely State Prison ("ESP") in Ely, Nevada. Pursuant to 42 U.S.C. § 1983 and proceeding *pro se*, plaintiff brings a civil rights action for violations of his constitutional rights.

   According to the complaint, the events giving rise to plaintiff's claims are as follows. On June 27, 2013, defendants used excessive force on plaintiff while he was awaiting transport to another facility. (ECF No. 1-1.) Defendants repeatedly hit and kicked plaintiff in the head and body. (*Id.* at 7.) Plaintiff was also choked and had his head slammed into the wall and ground.

---

[1] Plaintiff also filed a cross-motion for summary judgment (ECF No. 98), which was stricken from the record because it was untimely filed and longer than thirty pages. (*See* ECF No. 101.)

1    (*Id.*)  On August 27, 2013, while plaintiff was lying in his bunk, one of the defendants threatened

2    plaintiff with physical harm if he filed one more grievance about the beating.  (*Id.* at 11.)

3         On December 12, 2014, the District Court screened the complaint (ECF No. 14).  The

4    Court permitted two claims to proceed: (1) an Eighth Amendment claim for excessive use of

5    force against defendants Correctional Officer Cade Herring ("Herring"), Correctional Officer Hal

6    Hollingsworth ("Hollingsworth"), Correctional Officer Nathan Mingo ("Mingo"),[2] Correctional

7    Officer Dan Clark ("Clark"), Correctional Officer Glenn Dolezal ("Dolezal"), and Sergeant Paul

8    Hunt ("Hunt"), (*Id.* at 4-5); and (2) a First Amendment claim for retaliation against Herring.  (*Id.*

9    at 6-7.)

10        On May 26, 2015, the parties participated in a mediation session as part of the District of

11   Nevada's early inmate mediation program, but did not settle.  On May 17, 2016, defendants

12   moved for summary judgment (ECF No. 84).  This recommended disposition follows.

13                      **II.    LEGAL STANDARD**

14        Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n*

15   *v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary

16   judgment when the record demonstrates that "there is no genuine issue as to any material fact

17   and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S.

18   317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes

19   over facts that might affect the outcome of the suit under the governing law will properly

20   preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will

21   not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine"

22   only where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,

23   speculative opinions, pleading allegations, or other assertions uncorroborated by facts are

24   insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984

25   (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this

26   stage, the court's role is to verify that reasonable minds could differ when interpreting the

27   _____

28   [2] Mingo was dismissed from this action pursuant to Fed. R. Civ. P. 4(m).  (*See* ECF No. 69.)

record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested

1  under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th

2  Cir. 2004).

3  **III.    DISCUSSION**

4  **A.    Civil Rights Claims Under § 1983**

5  42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

6  deprive individuals of their federally guaranteed rights."  *Anderson v. Warner*, 451 F.3d 1063,

7  1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The

8  statute "provides a federal cause of action against any person who, acting under color of state

9  law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and

10  therefore "serves as the procedural device for enforcing substantive provisions of the

11  Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

12  Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right

13  by (2) a person or official acting under the color of state law.  *Warner*, 451 F.3d at 1067.

14  Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to

15  prove an infringement of the underlying constitutional or statutory right.

16  **B.    Eighth Amendment Excessive Use of Force Claim**

17  Defendants argue that plaintiff's excessive force claim is without merit and that the

18  minimal amount of force used on plaintiff "was done to maintain the internal security of the

19  institution."  (ECF No. 84 at 15, 19.)  Additionally, defendants argue that summary judgment

20  should be granted as to defendant Dolezal, as he was not present during any part of the incident.

21  (*Id.* at 19.)

22  The Eighth Amendment's proscription on cruel and unusual punishment forbids prison

23  officials from inflicting "the unnecessary and wanton infliction of pain . . . ."  *Whitley v. Albers*,

24  475 U.S. 312, 319 (1986).  Encompassed within the Eighth Amendment is a bar on the use of

25  excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992).  Courts in

26  the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the

27  inmate's injuries; (2) the need for application of force; (3) the relationship between the need and

28  amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that

1    officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475

2    U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323

3    F.3d 1178, 1184 (9th Cir. 2003).

4        The inmate must demonstrate that officials acted maliciously and sadistically to prevail.

5    "[W]henever prison officials stand accused of using excessive physical force in violation of the

6    [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith

7    effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*,

8    503 U.S. at 6-7.  As the Ninth Circuit has explained,

9        [t]he "malicious and sadistic" standard arose out of "the need to maintain or
         restore discipline" inside the prison.  When a prison disturbance occurs, prison

10       officials must make "decisions 'in haste, under pressure, and frequently without
         the luxury of a second chance.'"  In these situations, prison officials are "accorded

11       wide-ranging deference" and therefore, prisoners alleging excessive force must
         show that the force was applied "maliciously and sadistically to cause harm."

12

13   *Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and

14   *Whitley,* 475 U.S. at 320).  Thus, the court must be careful when reviewing the factors to verify

15   indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to

16   a knowing willingness that it occur." *Hudson*, 503 U.S. at 9.  Moreover, there is no need for a

17   showing of serious injury as a result of the force, but the lack of such injury is relevant to the

18   inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196

19   (9th Cir. 2000).

20       Excessive force cases "nearly always requires a jury to sift through disputed factual

21   contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on

22   many occasions that summary judgment or judgment as a matter of law in excessive force cases

23   should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli*

24   *v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d

25   965, 976 n. 10 (9th Cir. 1997) (citing cases).

26       Defendants argue that excessive force was not used against plaintiff.  (ECF No. 84.)

27   Defendants claim that while plaintiff was waiting to be transported to another institution, he had

28   his hands in his pockets and was not facing the south wall as he was ordered to do.  (*Id.* at 17.)

Because plaintiff refused commands to face the south wall, defendants Hollingsworth and Herring moved him to the north wall to deescalate the situation. (*Id.*) At that point, plaintiff "broke away from the hands-on escort in an aggressive manner." (*Id.*) Hollingsworth and Herring brought plaintiff to the ground to prevent him "from potentially attacking correctional officers, inciting a riot in the nearby transfer inmates, or otherwise harming himself." (*Id.*) Hollingsworth and Herring brought plaintiff to the ground "by placing their hands on [his] shoulders, pushing downwards so that [he] would crumple onto his knees, and thereafter pushing [him] down onto his belly to lie prostrate on the ground." (*Id.*) Two others, Mingo and former Correctional Officer Paul Malay ("Malay"), assisted Hollingsworth and Herring once plaintiff was on the ground, also using "minimal force to maintain[] control over [p]laintiff's prostrate quadrants." (*Id.*) Almost immediately after being brought down, plaintiff was cooperative and the force did not escalate. (*Id.*) Hunt called for a video-recorder (Clark) and a medical response team to respond to the scene. (*Id.*) Upon examination by ESP medical staff, no obvious injuries were noted. (*Id.*; *see also* ECF Nos. 84-1, 85-1, 85-2, 85-3.)

Defendants contend that minimal force was required when plaintiff was uncooperative and that defendants used an appropriate amount of force to place plaintiff on the ground in order to maintain the internal security of the institution. (ECF No. 84.) Defendants provide sworn declarations of each of the officers involved in the incident. (ECF Nos. 84-5, 84-7, 84-8, 84-9, 84-11.) Defendants also include the investigation detail report, the medical incident reports, and a videotape that documented the period after the incident, when plaintiff was held on the floor and examined by medical staff. (ECF Nos. 84-6, 85-1, 85-2, 85-3, 84-10.)

Plaintiff offers his affidavit and sworn declaration as evidence in support of his version of the events. (ECF No. 98 at 75-79, 94-97.) Plaintiff states that while waiting to be transported to another facility, defendants Herring and Hollingsworth approached him and started yelling at him for no reason. (ECF No. 1-1 at 5.) Plaintiff claims that Herring and Hollingsworth struck him repeatedly in the face, head, and body with a closed fist, choked him, bashed his head into a wall numerous times, picked him up off the ground, and slammed him down headfirst. (ECF No. 1-1 at 7.) Herring sat on plaintiff's back, attempting to break his neck. (*Id.*) Hollingsworth yelled at

plaintiff and kicked him in the back, neck, and face.  (*Id.*)  Defendant Clark kicked plaintiff in the back, neck, and face.  (*Id.*)  Defendant Dolezal twisted plaintiff's left ankle in an attempt to break it and kicked him in the back and face.  (*Id.*)  Defendant Hunt watched this incident from three feet away as his correctional officers beat plaintiff.  (*Id.*)  Plaintiff was restrained when the incident occurred.  (*Id.* at 5.)  Plaintiff asserts that though he offered no resistance, he was repeatedly punched in the face, kicked, and slammed against the ground and wall.  (ECF No. 1-1.)  Plaintiff claims that because of the alleged excessive force he suffered injuries and continues to have pain in his back, neck, head, left ankle, and left shoulder and blurred vision in both eyes.  (ECF No. 105 at 6.)  Plaintiff claims at least two other inmates witnessed the event, but because he was denied inmate-to-inmate correspondence, he was unable to obtain declarations from them.  (ECF No. 105 at 16.)

Viewing the evidence in the light most favorable to plaintiff, the court cannot say as a matter of law that the force used was not excessive.  Plaintiff's and defendants' version of the events in question clearly differ, and both sides provide evidence in the form of supporting sworn declarations.  Defendants characterize the force as "minimal" (ECF No. 84 at 17), while plaintiff characterizes the force as "maliciously and sadistically" applied.  (ECF No. 105 at 6.)  Defendants characterize plaintiff's injuries as *de minimis*, if not nonexistent (ECF No. 84 at 17-18), while plaintiff describes numerous injuries and continued pain.  (ECF No. 105 at 6.)  Accordingly, because a reasonable jury could conclude that defendants used an excessive amount of force, defendants' motion for summary judgment as to plaintiff's excessive force claim should be denied.

### 1.    Dolezal is entitled to summary judgment.

Defendants Clark, Herring, Hollingsworth, and Hunt argue that defendant Dolezal was not present during the incident and is, therefore, entitled to summary judgment.  (ECF No. 84 at 19.)  "Liability under §1983 must be based on the personal involvement of the defendant."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  Plaintiff alleges that Dolezal twisted his left ankle in an attempt to break it and kicked him in the back and face.  (ECF No. 1-1 at 7.)  However, none of the other defendants recalls Dolezal being present during the incident, and

1    Dolezal did not file an investigation detail report like all the other individuals involved.  (*See* ECF

2    No. 84 at 13.)  Additionally, in Dolezal's sworn declaration he states he was not present during

3    the incident.  (ECF No. 84-11 at 2.)

4          As defendants' point out, it may be that plaintiff confused Dolezal with Malay, who was

5    present for the incident and who filled out an investigation detail report stating he "grabbed

6    inmate Nolan's feet and secured them."  (ECF Nos. 84 at 18, 84-6 at 5.)  Plaintiff provides no

7    other evidence that Dolezal was present during the incident and argues only that "Dolezal had

8    plenty of time to flee the scene."  (ECF No. 103 at 5.)  Because it appears that Dolezal was not

9    personally involved in the alleged incident, he cannot be held liable.  Accordingly, Dolezal should

10   be dismissed as a defendant from this lawsuit.

11   **C.     First Amendment Retaliation Claim**

12         Defendants move for summary judgment of the retaliation claim on the basis that

13   plaintiff's claim is without merit.  (ECF No. 84 at 15.)  Alternatively, defendants ask for "a

14   ruling limiting plaintiff's damages to the maximum to which he would be entitled if that claim

15   were successful."  (*Id.*)

16         It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory

17   conduct by prison officials under § 1983.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir.

18   2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).   "Prisoners have a First

19   Amendment right to file grievances against prison officials and be free from retaliation for doing

20   so."  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).   A retaliation claim has five

21   elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the

22   inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's

23   exercise of his First Amendment rights and (5) did not reasonably advance a legitimate

24   correctional goal.  *Rhodes*, 408 F.3d at 567–68.  If the plaintiff fails to allege that the retaliation

25   had a chilling effect, he or she may still state a claim by alleging some other harm.  *Id.* at 568

26   n.11.

27         According to plaintiff, the events giving rise to his retaliation claim are as follows.  On

28   August 27, 2013, while plaintiff was lying in his bunk, defendant Herring stood by plaintiff's

1   cell and stared at him.  (ECF No. 1-1 at 11.)  Herring called plaintiff a name and plaintiff

2   answered, "what?"  (*Id.*)  Herring asked plaintiff, "[H]ow [did] you like that beat[ing] we put on

3   you in June?"  (*Id.*)  Plaintiff asked what Herring was doing at his cell and whether Herring was

4   going to "shake" him down.  (*Id.*)  Herring told him that if he filed one more grievance about the

5   beating, the correctional officers would be back and "it [would] be worse than last time."  (*Id.*)

6   This was the second time Herring had threatened him with physical harm after the June 27, 2013

7   attack.  (*Id.*)

8        Defendants argue only that defendant Herring never threatened plaintiff with physical

9   violence or threatened to inhibit him from submitting grievances and that the retaliation claim

10  should fail because there was no adverse State action.  (ECF No. 84 at 21.)  Instead of

11  elaborating on this, defendants provide a detailed damages discussion, calculating the exact

12  amount of damages (between $2.00 and $10.99) that plaintiff would be entitled to if he were

13  successful on his retaliation claim.  (ECF No. 84 at 21.)

14       It is improper to raise the issue of damages in a motion for summary judgment.  If

15  defendants believe plaintiff's retaliation claim has merit, the proper course is to engage in

16  settlement discussions with the plaintiff.

17       Defendants failed to provide competent evidence supporting their argument that no

18  adverse State action occurred.  Thus, there appears to be a genuine issue of material fact and the

19  court recommends that defendants' motion for summary judgment on the retaliation claim be

20  denied.

21                              **IV.    CONCLUSION**

22       Based upon the foregoing, the court concludes that defendants have failed to demonstrate

23  that there are no genuine issues of material fact for trial; thus, defendants' motion for summary

24  judgment should be denied.   Additionally, plaintiff's motion to compel is denied without

25  prejudice.  The parties are advised:

26       1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

27  Practice,  the parties may file specific written objections to this Report and Recommendation

28  within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate

Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### VII.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 84) be **DENIED** in its entirety.

**IT IS FURTHER RECOMMENDED** that defendant Dolezal be **DISMISSED** from this action.

**IT IS FURTHER RECOMMENDED** that a settlement conference be set in this case.

**DATED**: September 19, 2016.

**UNITED STATES MAGISTRATE JUDGE**